VIDA SARGENT, Dependent of JOSEPH S. SARGENT, v. FRANK A. CLEMENTS, d/b/a FRANK A. CLEMENTS COMPANY, and UNITED STATES FIDELITY & GUARANTY COMPANY, a Corporation, Appellants.—88 S. W. (2d) 174.

Division One, November 12, 1935.

*Carter & Jones, Richard S. Bull* and *William A. Dorsey* for appellants.

*Joseph Boxerman* for respondent.

FERGUSON, C.—This is an appeal from a judgment of the Circuit Court of Lewis County affirming an award of the Workmen's Compensation Commission. Joseph S. Sargent was doing the "dynamite work" for three separate contractors who were engaged in

the construction of twelve miles of State Highway No. 61 in Lewis County. Each contractor was in charge of and doing the construction work on a separate section of the road. Sargent contracted separately with the contractors to do all the "dynamite work" required, by each, in the course of the construction work. He was killed, July 15, 1932, by an explosion of dynamite while working on the section of road which was in charge of, and under construction by the appellant Frank A. Clements, d/b/a Frank A. Clements Company. The widow, Vida Sargent, made claim for compensation under the Workmen's Compensation Act against the three construction contractors jointly. At the hearing the referee made a finding, that "at the time and place of his death" Sargent "was an employee of Frank A. Clements;" that his death "was caused by an accident arising out of and in the course of "his employment by Clements; and that he "was not an independent contractor." The referee then made an award in favor of the claimant widow, as a total dependent, against Frank A. Clements, d/b/a Frank A. Clements Company, and his insurer, as follows:

"For burial expenses, to Vida Sargent, the sum of $150.00.

"For death benefits, to Vida Sargent, the sum of $20.00 per week for 403.8 weeks.

"If, however, said Vida Sargent should die or remarry prior to the expiration of said 403.8 weeks, said compensation or death benefit shall thereupon cease and abate and no further payments shall be required."

Upon review by the full commission the finding and award made by the referee was adopted and affirmed with one commissioner dissenting on the ground that deceased "was an independent subcontractor of Frank A. Clements and the liability in this case must be determined" by Section 3308, Revised Statutes 1929, and that under said section Clements is not liable. As noted Clements and his insurer bring this appeal from the judgment of the circuit court affirming the award.

It appears that the commission's conclusion was that the relation of master and servant existed between Sargent and Clements and that the award was made on that theory. Appellants' sole assignment of error is "that there was not sufficient competent evidence . . . to warrant the award." In support of their contention appellants urge that upon the undisputed and uncontroverted evidence, and claimant's own evidence, viewed in the light most favorable to the finding which is the basis of the award, it appears as a matter of law that Sargent was an independent contractor and that appellant is not therefore liable for compensation under the terms of the Workmen's Compensation Act. In reply respondent argues that the finding of the commission that the relation of master and servant existed and that Sargent was not an independent contractor is sup-

ported by substantial evidence and is conclusive but that if it be held that Sargent was an independent contractor his death, under the circumstances shown, as compensable under the provisions of subsection (a) of Section 3308, Revised Statutes 1929, of the Workmen's Compensation Act and the award should therefore be affirmed. That this section may be before us, as we proceed with this discussion, we quote it here:

"Any person who has work done under contract on or about his premises which is an operation of the usual, business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business."

A further statement of the facts may better facilitate an understanding of the situation out of which this claim arises. We find no substantial conflict in the evidence and the facts stated, shown by the evidence offered by claimant, stand uncontroverted so that the court may properly be called upon to declare the legal effect and significance thereof and determine the correctness of the commission's conclusion thereon. As stated Clements and other construction contractors were engaged in the construction of State Highway No. 61 in Lewis County. Clements was in exclusive charge of, and doing the construction work on, the "middle section" of the road. Other contractors were doing the construction work on the other sections so that the connecting and contiguous sections made a continuous strip of twelve miles of road under construction. Sargent was a competent, experienced and skilled "powder man." Dynamiting work requires experience and skill. Sargent had been engaged almost continuously in that work for more than ten years and "was considered an expert" in that line of work. Learning that this road construction work was about to be commenced in Lewis County he went to see the several contractors and entered into a like "arrangement" or "oral contract" with each separately to do all the dynamite work which might be necessary and required in the course of the construction work on their respective sections and thus over the entire twelve miles of road. The dynamite work was to be done at a fixed and agreed price per cubic yard for rock excavation and certain other rates of pay for other dynamiting. In return Sargent agreed to and did furnish at his own expense all necessary materials, tools, equipment and labor and agreed to hire and pay the wages of the men he employed in the work. In May, 1932, he moved his air compressor, materials and tools to the construction site and took with him two men, Thornsberry and Werner, who were regularly employed by him, Werner "as air compressor man" and Thornsberry as "foreman" and "powder man." Thereafter, Sargent and his force of men, continued the dynamiting work on the various sections of road

until his death July 15. He hired, directed, controlled and discharged the men employed under him and obligated himself to pay, and they looked to him for the payment of, their wages. He "usually had five or six men employed but sometimes as many as twelve or thirteen." At times he would have men at work, at the same time, on more than one section. The several contractors would designate and advise Sargent where and how much dynamiting they required and thereupon Sargent would move the necessary materials and tools, and send a sufficient force of men, to the designated place and direct the doing of the work, either in person or through his foreman Thornsberry. As stated the contractors paid an agreed price based upon a fixed rate for the work done and Sargent supplied the labor, tools and materials and did the work at his own expense. It clearly appears from the testimony of both Werner and Thornsberry, who were called as witnesses on behalf of claimant, that Sargent "would line up the work," direct his men as to "where the dynamite was to be placed" and "how much dynamite was to be used;" that is that Sargent, and not the contractors for whom he was doing this work, controlled the method or mode of doing it and the details thereof. The contractors employed Sargent because the work required particular experience, skill and special knowledge and he was an expert in that line of work; for that reason they committed the control of the details and the method or means of doing the work entirely to him. It does not appear that the several contractors, or either of them, exercised control, or had the right to, over the time Sargent or his employees worked, that is, when they should commence or cease work or the number of hours they were to work. The number of men on a job, the wages he paid, the quantity of materials and the kind of tools used, the method of doing the work, the time Sargent and his employees commenced or ceased work and the hours of labor during any certain period were all matters left to and entirely within the control of Sargent. He contracted to do certain work at an agreed price and the contractors neither retained nor exercised any control over the time, method, means or agencies of doing that work; Sargent's obligation to them was only as to the result. One Todd was foreman for contractor Clements. There is no showing that either Clements or Todd, or anyone connected with the Clements' organization, ever undertook or assumed to direct Sargent or his employees as to the manner or means of doing the dynamiting work. All that appears is that either Clements or Todd would designate the place where such work was to be done and specify the area or extent thereof desired and thereupon Sargent and his employees, under his direction, would move the necessary materials and tools to the designated place and do the work under the supervision and direction of either Sargent or his foreman Thornsberry in the manner and pursuant to the method prescribed by Sargent

for the particular piece of work. Clements and his foreman Todd had made certain measurements and outlined the extent or area of certain dynamite work they wanted done at and near the "Wolfmeyer bridge" on the section of road under construction by Clements. While working at that point, on the section of road under construction by Clements, handling and placing dynamite preparatory to doing the work designated, Sargent was killed by an accidental explosion of dynamite.

■ Numerous cases and texts discuss and define the distinction between an independent contractor and a servant but with the view we have of this case and the applicable law we do not deem an extended discussion of the subject of independent contractor required. We have laid down a general definition of an independent contractor to be "one, who exercising an independent employment, contracts to do a piece of work according to his own methods, without being subject to the control of his employer except as to the result of his work." [Flori v. Dolph (Mo.), 192 S. W. 949, 950; Coul v. George B. Peck Dry Goods Co., 326 Mo. 870, 32 S. W. (2d) 758; Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S. W. (2d) 909; Rutherford v. Tobin Quarries, 336 Mo. 1171, 82 S. W. (2d) 918.]

In Maltz v. Jackoway-Cap Co., supra, we said:

"This and other definitions of which status serve rather as a general outline of the field of inquiry, as is recognized in the universal expression to the effect that each case must depend upon its own surroundings, facts, and circumstances, and be subjected to established specific tests in aid of the ultimate and decisive test, right of control. The commonly recognized tests of such relationship are: The existence of a contract for the performance by a person of a certain piece of work at a fixed price; independent nature of his business or occupation; his employment of assistants with the right to supervise their work; his obligation to furnish necessary tools, supplies, and materials; his right to control the progress of the work, except as to final results; the time for which he is employed; the method of payment, whether by time or by the job; and perhaps others." Applying the above definition of an independent contractor and the various recognized tests to the undisputed facts of this case but one conclusion results, that in performing the contract Sargent had an independent control over the work except as to result and the only control exercised by Clements had to do with the result sought and not with the method or manner in which Sargent was to do the work; therefore Sargent's status was that of an independent contractor. In addition to the cases above cited see Woodruff v. Superior Mineral Company (Mo.), 70 S. W. (2d), 1104, and on certiorari to this court State ex rel. Superior Mineral Co. v. Hostetter, 337 Mo. 718, 85 S. W. (2d) 743; Crenshaw v. Ullman, 113 Mo. 633, 20 S. W. 1077; McGrath v. City of St. Louis,

1134

215 Mo. 191, 114 S. W. 611; Carman v. Central Western Dairies (Mo. App.), 58 S. W. (2d) 781; Meredosia Levee & Drainage District v. Industrial Commission, 285 Ill. 68, 120 N. E. 516; Litts v. Risley Lumber Co., 224 N. Y. 321, 120 N. E. 730; Western Indemnity Co. v. Pillsbury, 172 Cal. 807, 159 Pac. 721; Pace v. Appanoose County, 184 Iowa, 498, 168 N. W. 916; Trustees of Masonic Lodge of Elk City v. Smith, 161 Okla. 200, 17 Pac. (2d) 430; 14 R. C. L., p. 71.

It does not.however follow, as appellants contend, that since Sargent was an independent contractor the award to the claimant widow was improperly made. Reverting to subsection (a) of Section 3308, Revised Statutes 1929, of our Workmen's Compensation statute, quoted, supra, we are of the opinion that the award is warranted and sustained by the provisions thereof. This section makes any person "who has work done under contract on or about his premises which is an operation of the usual business which he there carries on . . . liable" under the provisions of the act "to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business."

Sargent was, as we have held, an independent contractor doing work for Clements "under contract." He was killed on that section of road which Clements was constructing by the accidental explosion of dynamite while "doing work" for Clements which was "in the usual course" of Clements' "business" and which was an integral and necessary part of the "operation of the usual business" which Clements was "there" carrying on. Was Sargent working "on or about" Clements' "premises" within the meaning of that term as thus used in subsection (a) of Section 3308? Clements was engaged in the business of road construction. He had contracted to construct, and had under construction, a definite, specified section of State highway. The dynamiting necessary in the course of that work was an integral part of the "operation of the usual business" which he was carrying on there. The term "premises" as so used should not be given a narrow or refined construction but rather, in keeping with both the spirit and specific direction (Sec. 3374, R. S. 1929) of the Workmen's Compensation Act, should be liberally construed and applied. We discover no intention on the part of the Legislature to limit or restrict the term "premises" as here used to premises of which the employer is the owner as appears in the exception found in the later subsection (c). We think it a fair interpretation of subsection (a), supra, expressing the legislative intent, to hold that "premises" as there used contemplates any place, under the exclusive control of the employer, where the employer's usual business is being carried on or conducted and that the benefits of the Compensation Act accrue to any person injured, or the dependents

of any person killed, while doing work, under contract, at such place, which is necessary to and a part of the operation of such employer's usual business at such place; therefore on the undisputed facts in this case and in accord with this construction of the statute claimant was entitled to the award made.

Substantially the same construction of the word "premises," as used in subsection (a), has been adopted by both the Springfield and St. Louis Courts of Appeals. In Cobb v. Standard Acc. Ins. Co. (Mo. App.), 31 S. W. (2d) 573, l. c. 575, claimant's husband was killed while loading railroad ties aboard railroad cars. The Springfield Court of Appeals discussing subsection (a) of Section 3308, said: "It is our opinion the facts in this case would support a finding that the work at which Cobb was engaged was 'on or about' the premises of defendant, and that the work was 'an operation of the usual business,' of the defendant . . . 'there carried on.' The words 'on or about' must be liberally construed. The loading of the ties was an important adjunct to the industry in which defendant was engaged, and, since the ties were manufactured from their timber located in that neighborhood, it is not unreasonable to hold that the general words 'on or about' the premises would include the loading place located some distance away." In Simpson v. New Madrid Stave Company, 227 Mo. App. 331, 52 S. W. (2d) 615, the Stave Company was engaged in the manufacture of barrel staves. Its plant was at New Madrid, Missouri. It employed George Simpson "as an independent contractor to cut a large amount of timber . . . on the other side of the Mississippi River in the State of Kentucky." While Simpson was overseeing the cutting of the timber "a limb of a tree fell on him" and he was killed. His widow filed a claim for compensation. The commission disallowed the claim "on the ground that deceased was an independent contractor and for that reason not an employee of the Stave Company within the Workmen's Compensation Act." The circuit court reversed the commission. The Springfield Court of Appeals, affirming the judgment of the circuit court, said: "The first question we are required to determine is whether the law extends its benefits to an independent contractor who is employed as Mr. Simpson was employed in this case." Citing subsection (a) of Section 3308, the court held that Simpson "was clearly within the plain terms of this statute" and in that connection said: "The premises of the employer is any place where, in the usual operation of his business, it is necessary for those whom he has employed to do the work to be while doing it." See, also, the opinion of the St. Louis Court of Appeals in Meyer v. Adams (Mo. App.), 50 S. W. (2d) 744, and Woodruff v. Superior Mineral Co., supra. Carman v. Central Western Dairies (Mo. App.), 58 S. W. (2d) 781, which appellant cites, is distinguishable on the facts as is also Rutherford v. Tobin Quarries, supra.

While apparently the commission made the award herein on the theory that Sargent's status was that of a servant and though it appears that, upon the facts, he was an independent contractor nevertheless his death being compensable under the provisions of subsection (a) of Section 3308, supra, his widow, the claimant herein, is entitled to the benefits provided by the Compensation Act and since the correctness of the computation thereof made by the commission is not questioned it is not necessary to remand the case to the commission for any further or other proceedings.

The evidence herein warrants and sustains the award under the applicable provisions of the statute and the judgment of the circuit court affirming the award should therefore be affirmed. It is so ordered. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.