Gary D. Witt, Judge
James Barger ("Barger") appeals the Jackson County Circuit Court's grant of summary judgment in favor of Kansas City Power & Light Company ("KCP&L").
*426 Barger argues that the trial court erred in granting summary judgment in favor of KCP&L because he was not a statutory employee as provided under section 287.040.1[1] and KCP&L was not a statutory employer. We reverse and remand.
Facts and Procedural History[2]
KCP&L's parent company, Great Plains Energy Services, Inc. ("GPES"), contracted with Projectile Tube Cleaning, Inc. ("Projectile"), a Pennsylvania company, to clean condenser tubes. The parties signed a Master Servant Agreement ("Agreement") which took effect on March 27, 2009. The Agreement set forth the terms and conditions of all service requests by KCP&L and that each service request would be defined by a specific purchase order. The Agreement further stated that Projectile "agrees and represents that it is an independent contractor and its personnel are not employees or agents of GPES for federal tax purposes or any other purpose whatsoever, and are not entitled to any GPES employee benefits." The Agreement stated that Projectile was solely responsible for payment of worker's compensation insurance and claims.
KCP&L is in the business of generating, transmitting, distributing, and selling electricity in western Missouri and eastern Kansas. KCP&L owns and operates a coal fired power plant in La Cygne, Kansas ("La Cygne Plant"). The La Cygne Plant produces electrical energy to KCP&L customers by introducing water into condenser boilers. The condensers then heat the water in tubes located on the exterior of the condensers. The water is heated into steam and then transferred to turbines. These turbines power a generator, which creates electricity. Cleaning the condenser tubes involves using high-pressure pumps to shoot a "scraper," a bullet-like object, through the thousands of condenser tubes. Each cleaning of the condenser tubes at the plant takes approximately four days.
Prior to contracting with Projectile, KCP&L used its own employees and equipment to clean the condenser tubes at the La Cygne Plant. At some point, KCP&L made the business decision to contract with companies like Projectile to perform condenser tube cleanings at all of their power plants. The condenser tubes at the La Cygne Plant were cleaned one to four times per year over the five years between 2010 and 2014. Barger, an employee of Projectile, had cleaned the condenser tubes at the La Cygne Plant on approximately five prior occasions over several years.
On March 21, 2013, Barger was cleaning the condenser tubes at the La Cygne Plant when a grating on the catwalk on which he was standing fell from under him and he grabbed the grate in front of him to keep from falling, injuring his right wrist.
On July 20, 2013, Barger filed a Workers' Compensation claim with the Pennsylvania Bureau of Workers' Compensation, against Projectile, his employer. On March 12, 2015, Barger filed a petition for damages in the Circuit Court of Jackson County against KCP&L, claiming negligence and res ipsa loquitur in regard to his injury. KCP&L filed an answer, which included the affirmative defense that Barger *427 was a statutory employee of KCP&L under the Missouri Workers' Compensation Law. Chapter 287, RSMo. KCP&L later moved for summary judgment on the basis that Barger was a statutory employee of KCP&L, pursuant to section 287.040.1. After full briefing by both parties, the circuit court granted KCP&L's motion for summary judgment. This timely appeal followed.
Standard of Review
The trial court makes its decision to grant summary judgment based on the pleadings, record submitted, and the law; therefore this Court need not defer to the trial court's determination and reviews the grant of summary judgment de novo. ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp. , 854 S.W.2d 371, 376 (Mo. banc 1993) ; Rule 74.04[3] . In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper. Id. Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. Id. "The facts contained in affidavits or otherwise in support of a party's response to the summary judgment motion." Id. Only genuine disputes as to material facts preclude summary judgment. Id. at 378. A material fact in the context of summary judgment one from which the right to judgment flows. Id.
A defending party ... may establish a right to summary judgment by demonstrating: (1) facts negating any one of the elements of the non-movant's claim; (2) "that the non-movant, after adequate period for discovery, has not been able and will not be able to produce sufficient evidence to allow the trier of fact to find the existence of any one" of the elements of the non-movant's claim; or (3) "that there is no genuine dispute as to the existence of the facts necessary to support movant's properly pleaded affirmative defense." Id. at 381. Each of these three methods individually "establishes the right to judgment as a matter of law." Id.
Goerlitz v. City of Maryville , 333 S.W.3d 450, 452-53 (Mo. banc 2011).
Analysis
Barger raises two points on appeal. In his first point on appeal, Barger argues that the trial court erred in granting summary judgment in favor of KCP&L because he was not a statutory employee as provided under section 287.040.1. In his second point on appeal, Barger argues that the trial court erred in granting summary judgment in favor of KCP&L because KCP&L is not a statutory employer since it owned the premises upon which improvements were being made pursuant to section 287.040.2.
"The determination of whether a case falls within the exclusive jurisdiction of the Workers' Compensation Law is a question of fact that is left to the sound discretion of the trial court." State ex rel.MW Builders, Inc. v.Midkiff , 222 S.W.3d 267, 269 (Mo. banc 2007). We review only for abuse of discretion. Id. However, when "the facts are not in dispute as to the nature of the agreement and the work required by it, the existence or absence of statutory employment is a question of law for the courts to decide." State ex rel. MSX Intern., Inc. v. Dolan , 38 S.W.3d 427, 429 (Mo. banc 2001) (overruled on other grounds by *428 McCracken v. Wal-Mart Stores East, LP , 298 S.W.3d 473 (Mo. banc 2009) (quoting Bass v. National Super Markets, Inc. , 911 S.W.2d 617, 621 (Mo. banc 1995) ). A factfinder will not be asked to render a factual decision unless the parties disagree about whether the work that caused the injury was work performed under and required by the contract between the alleged statutory employer and the independent contractor or subcontractor. Bass , 911 S.W.2d at 621. "The party asserting the existence of statutory employee status bears the burden of proving that the injured person was a statutory employee of the purported statutory employer." McCracken v. Wal-Mart Stores East, LP, 298 S.W.3d 473, 480 (Mo. banc 2009) (quoting Martinez v. Nationwide Paper , 211 S.W.3d 111, 115 (Mo. App. 2006) ). KCP&L bore the burden to establish that Barger fell within the scope of its statutory employee.
The purpose of the inquiry into whether an employee is a statutory employee is to determine if the contracting out of the work to a third party vendor was for the purpose of circumventing the Worker's Compensation Law. Bass , 911 S.W.2d at 619.
In Point One, Barger argues that the trial court erred in granting summary judgment in favor of KCP&L because he was not a statutory employee as provided under section 287.040.1. Barger argues that the work he performed was sporadic and not within KCP&L's usual course of business as performed by its employees.
A person falls under the definition of a "statutory employee" under the Missouri Workers' Compensation Law if: (1) the work is performed pursuant to a contract; (2) the injury occurs on or about the premise of the alleged statutory employer; and (3) the work is in the usual course of the alleged statutory employer's business. Vatterott v. Hammert's Iron Work's, Inc. , 968 S.W.2d 120, 122 (Mo. banc 1998) (citing section 287.040.1). The first two elements are not at issue in this case. The only dispute between the parties is if the work Barger was performing fell within the usual course of KCP&L's business.
"Usual business" is defined as activities (1) routinely done (2) on a regular and frequent schedule (3) contemplated in a contract or agreement between the contractor and the alleged statutory employer which will be repeated over a short span of time and (4) performance of which without the contract would require the statutory employer to hire permanent employees. McCracken , 298 S.W.3d at 480 (Mo. banc 2009) (quoting Bass , 911 S.W.2d at 621 ). "Whether a particular sort of work is within a party's usual course of business is a fact-driven inquiry; there is no 'litmus paper' test." Id. This definition is designed to exclude from the definition of statutory employee "specialized and episodic work that is essential to the employer but not within the employer's usual business as performed by its employees." Id.
We need not address each of Barger's specific arguments because we find material facts regarding Barger's status as a statutory employee to be in dispute, which renders the circuit court's motion for summary judgment in error. In KCP&L's Statement of Uncontroverted Facts, KCP&L states that "[i]t is necessary and essential to the usual operations of KCP&L's business for the condenser tubes to be cleaned regularly." Barger controverts this statement in his response to KCP&L, stating that "[c]ondensers do not need to be cleaned regularly," citing to portions of the deposition of a KCP&L Shift Foreman. The condenser tubes were cleaned between one and four times per year and each cleaning took approximately four days. Further in KCP&L's Statement *429 of Uncontroverted Facts, KCP&L states that "[i]n order for the condensers located at the La Cygne power plant to operate properly, they must be regularly serviced and maintained." Barger controverts this statement in his response to KCP&L, stating that "[c]ondensers do not need to be cleaned regularly.... The tubes are cleaned on an 'as-needed basis,' " citing to the deposition of a KCP&L Shift Foreman. KCP&L also states in its Statement of Uncontroverted Facts that "[i]f KCP&L did not contract with a third party, such as Projectile, to provide these services, KCP&L would be required to hire its own employees to service and maintain the condenser tubes." Barger controverted this statement in his response to KCP&L, stating "Projectile's work at KCPL was infrequent and would not require KCP[&]L to hire permanent employees. Projectile's work at La Cygne was scheduled to last only four days when Barger was injured ... Projectile might go to KCP[&]L once or twice a year."
It was disputed between the parties if KCP&L still owned the tools necessary to complete the work. KCP&L even acknowledges that it did not own all of the necessary tools. It was disputed between the parties just how specialized this work actually was and the extent to which KCP&L would have to hire permanent employees absent this contract.
Whether the work done by Barger was performed on a regular basis is material to the determination of whether the work was on a "regular and frequent schedule." Whether KCP&L would have had to hire permanent employees if not for contracting with Projectile is material to the determination of whether "performance of [the work] without the contract would require the statutory employer to hire permanent employees." These controverted facts are material to determining whether the work performed by Barger was in the usual business of KCP&L. Genuine disputes of material facts preclude summary judgment.[4] Goerlitz v. City of Maryville , 333 S.W.3d 450, 452 (Mo. banc 2011). Point One is granted and the circuit court's entry of summary judgment is reversed.[5]
*430 Conclusion
The circuit court's judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.
All concur

All statutory citations are to RSMo 2000 as supplemented and in effect on the date of the injury (March 2013), unless otherwise noted.

In reviewing the grant of summary judgment we review the record in the light most favorable to the party against whom judgment is entered. ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp. , 854 S.W.2d 371, 376 (Mo. banc 1993).

All rule references are to Missouri Supreme Court Rules (2017).

Though the parties do not disagree about whether the work that caused Barger's injury was work performed under and required by the contract between KCP&L and Projectile, rendering whether Barger's work was in the usual course of KCP&L's business a question of law to be determined by the court, Bass , 911 S.W.2d at 621, that does not foreclose the need for an evidentiary hearing to permit the parties the opportunity to present disputed evidence relevant to determining the legal issue. In fact, in Bass , whether work performed by an independent contractor was in the usual course of an alleged statutory employer's business was determined after a trial.

Both parties rely on cases that were decided prior to the Supreme Court's ruling in McCracken v. Wal-Mart Stores East, LP , 298 S.W.3d 473 (Mo. banc 2009), which made clear that the determination of statutory employee status is an affirmative defense, not a matter of the trial court's subject matter jurisdiction, and that the Missouri Workers Compensation Law should be strictly construed pursuant to section 287.800. 298 S.W.3d at 478-81. Prior to McCracken , claims of statutory employee status were regularly presented in motions to dismiss for lack of subject matter jurisdiction. See, e.g. , Romero v. Kan. City. Station Corp. , 98 S.W.3d 129 (Mo. App. W.D. 2003) ; McGuire v. Tenneco, Inc. , 756 S.W.2d 532 (Mo. banc 1988). The Supreme Court in McCracken made clear that a claim of statutory employee status is an affirmative defense which the circuit court determines as a matter of statutory authority and should no longer be brought as a question of subject matter jurisdiction. Further, prior to the 2005 amendment to section 287.800, the Missouri Workers Compensation Law was to be interpreted liberally. Bass , 911 S.W.2d at 621. However, the 2005 amendment to section 287.800 makes clear that the Missouri Workers Compensation Law was to be interpreted strictly, which the McCracken court noted. Therefore, to the extent that the parties relied on cases prior to the decision in McCracken , they are of limited use or persuasiveness.