JESSIE MARY VISELLI and JOE ANTHONY VISELLI, Respondents, v. MISSOURI THEATRE BUILDING CORPORATION and HARTFORD ACCIDENT & INDEMNITY COMPANY, Appellants, No. 41881—234 S. W. (2d) 563.

Division Two, November 13, 1950.

Motion for Rehearing or to Transfer to Banc Overruled, December 11, 1950.

*John S. Marsalek* and *Moser, Marsalek, Carpenter, Cleary & Carter* for appellants.

*Irwin White* and *Luke, Cunliff & Wilson* for respondents.

[564] BARRETT, C.—The circuit court has affirmed the Industrial Commission's award of $12,000.00 in death benefits to Henry Louis Viselli's widow and dependent child and the question for decision upon this appeal by the Missouri Theatre Building Corporation is whether Viselli was a *statutory employee* within the meaning of the Workmen's Compensation Law. "Any person who has work done

under contract on or about his premises *which is an operation of the usual business which he there carries on* shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer *while doing work which is in the usual course of his business."* Mo. R. S. A., Sec. 3698(a).

The Missouri Theatre Building Corporation was incorporated in 1934 and since that date has owned the twelve-story public office building in St. Louis known as the Missouri Theatre Building. The tenants in the building are "professional men, dentists, and doctors, and a few commercial tenants." Viselli, a window washer, sustained fatal injuries when he fell from an eighth floor window. He was employed by Harry Berman, an independent contractor, and a minor employer under the compensation act. Berman was in the window washing business and washed the windows of other buildings. He had his own employees and the window washing contract was based upon an agreed sum per window. He supplied the men with all their equipment, sponges, chamois, buckets and brushes and he or his foreman instructed them in their duties. As between Viselli's dependents and the building corporation the claim was submitted upon the following stipulated facts:

"On or before February 12, 1948 the usual business of the Missouri Theatre [**565**] Building Corporation, which was carried on at the premises and building known as Missouri Theatre Building, located at Grand and Lucas Avenues, St. Louis, Missouri, consisted of the rental of space in said building for profit to tenants who use the space for offices and stores, and the operation and management and maintenance of said building in the manner hereinafter set forth; that in the course of its said business, the Missouri Theatre Building Corporation maintained said building, its offices and stores, and provided and furnished to the tenants thereof various services, such as electricity, heat, air-conditioning, elevator service, janitor service and other general maintenance requirements, including window cleaning, which service was at all times provided by the Missouri Theatre Building Corporation, as follows:

"To provide the window cleaning service for its tenants the said corporation had engaged Harry Berman by verbal contract, by the terms of which Harry Berman was to clean the windows in the building and in doing so was to use his own employees; this arrangement with Harry Berman had been a continuing one for over twenty years prior to February 12, 1948, and was in effect on said date; and by said arrangement with Harry Berman the work of cleaning the windows of the said building was done approximately every two weeks throughout the year, and was being done on February 12, 1948; that the Missouri Theatre Building

Corporation paid said Berman for said work at an agreed rate per window; that Berman selected and hired the men who performed said work; that he had and exercised sole and exclusive control over said men in said work, and that their rate of pay was fixed by agreement between them and Berman.

"On February 12, 1948, Louis Henry Viselli, while in the course of his employment with said Harry Berman, was engaged in the work of washing the windows on the eighth floor of the Missouri Theatre Building, and while so doing fell from the window and suffered injuries resulting in his immediate death."

The appellant urges, because the building corporation had never, at any time since its incorporation, actually engaged in window washing through its employees and because the work was performed exclusively by Berman under his independent contract, that Viselli, Berman's employee, did not become a statutory employee within the terms of the act. The appellant admits that it "customarily supplied window washing service to its tenants under their rental contracts" but urges, nevertheless, since it had never performed the operation of window washing on any occasion through its employees, that the stipulated facts do not bring it within the provisions of the act as a statutory employer. Specifically, the appellant says, "Whether or not the washing of windows may be regarded as a usual operation of the ownership and management of a public office building is not determinative * * *." Its interpretation of the act is that the work in which the injured party was engaged must be an operation of the alleged statutory employer's business and "the operation must be one which the alleged statutory employer usually performs through his own employees." In short, to sustain its position it is insisted that the previous tests of the applicability of the act have been modified.

It is true that the court in State ex rel. Long-Hall Laundry & Dry Cleaning Co. v. Bland, 354 Mo. 97, 188 S. W. (2) 838, italicized and emphasized the words "usual," "he" and "his" in the statute and said: "The statute declares the operation performed by the workmen must be a part of the *usual* business which 'he'—that is, the particular employer—carries on." And so as to the installation of a permanent improvement by an independent contractor, a boiler in a laundry, it was held that the laundry was not a statutory employer when the boiler exploded and killed the independent contractor's employee. (Cases of this type are collected in 150 A. L. R. 1214, 1234.) The court added: "It seems this could not occur if the operation was one which the employer never did do, himself, through his direct [566] and immediate employees and was (as here) only done in connection with a new installation." But the court did not alter or modify the previous rules, neither did the court establish as an infallible test of the applicability of the act that the alleged statutory employer must have performed, at some time, the

work or operation relied upon as bringing it within the act. The fact is, it is very difficult, and perhaps undesirable, to formulate a generally applicable rule (annotation 150 A. L. R. 1214, 1216) and there is no infallible test. Each case presents its own peculiar difficulties and must be determined upon its particular facts. Morehead v. Grigsby, 234 Mo. App. 426, 132 S. W. (2) 237.

In Perrin v. American Theatrical Company, 352 Mo. 484, 178 S. W. (2) 332, it was held that a musician, a member of Earl Carroll's Vanities, was not a statutory employee of the American Theatre when he fell on a temporary stairway leading from the stage to the floor of the parquet. The distinguishing factors there were that it was the business of the company to furnish a theatre, "all set up," and not to actually produce a show. Consequently, it was not discharging its usual business through independent contractors. The test there applied was "if the work being done at the time of injury is not an operation of, or in the usual course of, the business which the employer customarily carries' on upon his premises, but ' is only incidental, ancillary, or auxiliary thereto, then the contractor, subcontractor, or his employee who is injured while engaged in such character of work is not a 'statutory employee' within the meaning of the act, and the owner or occupant of the premises having the work done under contract is not to be deemed the employer of such injured party for the purpose of having liability cast upon him under the provision of the act." This, as we understand it, is but a negative statement of the test which the appellant says has been modified: "What work is customarily and usually done in the course of such a business, or industry, in general." Kennedy v. J. D. Carson Co., (Mo. App.) 149 S. W. (2) 424. In Settle v. Baldwin, 355 Mo. 336, 196 S. W. (2) 299, the question was whether an employee of a wholesale ice dealer, injured in icing a refrigerator car, was the railroad's statutory employee. The test applied there was that "the icing service was not an operation of Railroad Company's business as a common carrier." The railroad was capable of performing the work but "there was no evidence introduced showing that Railroad Company has customarily carried on this work in the usual course of its business."

Here, it was stipulated that "the usual business of the Missouri Theatre Building Corporation, which was carried on at the premises and building known as Missouri Theatre Building, * * * consisted of the rental of space in said building for profit to tenants who use the space for offices and stores, and the operation and management and maintenance of said building * * *." It was plainly stipulated that *"in the course of its said business,* the Missouri Theatre Building Corporation *maintained said building,* its offices and stores, *and provided and furnished* to the tenants thereof various services, such as electricity, heat, air-conditioning, elevator

service, janitor service and other *general maintenance requirements, including window cleaning,* * * *." Under the stipulation the appellant not only furnished window cleaning service "as an operation of (its) usual business" and "in the usual course of (its) business" (Mo. R. S. A., Sec. 3698(a) but it specifically contracted with its tenants that it would do so. In fact, in its brief, the appellant admits that it "customarily supplied window washing service to its tenants under their rental contracts." Thus, under the stipulation and admitted fact, the window cleaning service was an integral and necessary part of the appellant's business, as the servicing of an elevator, by an independent contractor, was a necessary instrumentality in carrying on the business of a furniture store. Kennedy v. J. D. Carson Co., (Mo. App.) 149 S. W. (2) 424, 428.

It is immaterial, certainly not determinative, that the employer was engaged in the business for a brief time, only once, or for a considerable length of time (Morehead [567] v. Grigsby, 234 Mo. App., l. c. 434, 132 S. W. (2), l. c. 241) and, likewise, the mere fact that the appellant had never "performed the operation of window washing on any occasion" by its employees cannot be the determining factor. As "an operation of the usual business which (it) there carries on" it was the appellant's duty to furnish the window cleaning service. The statute, Sec. 3698(a), " 'was intended to deal with situations where a person or corporation discharges his or its duties under a contract by subletting work, or where such person or corporation delegates his or its usual business to another under contract * * * and to prevent employers from relieving themselves of liability by doing through independent contractors what they would otherwise do through direct employees.' " Perrin v. American Theatrical Co., 352 Mo., l. c. 489, 178 S. W. (2), l. c. 334. In Fox v. Fafnir Bearing Co., 107 Conn. 189, 139 Atl. 778, it was held that an independent contractor's window washer was the statutory employee of a ball bearing manufacturer. The court there pointed out that there was no infallible general test but that "It is in each case largely a question of degree and of fact, * * *." Window washing was not a part of the "process" in the art of making ball bearings. "But the business required the defendant employer to maintain and operate a factory with necessary machinery, * * * and other instrumentalities for the production and marketing of its product. Any work which was an essential part of the maintenance and operation of its factory was a part of its 'trade or business,' though not a process in the actual work of manufacturing ball bearings. A helpful, but not necessarily conclusive, inquiry is whether the work in question is of a character that ordinarily would be performed in the factory by its regular employees. * * * The plaintiff's work of windowwashing was work which had to do with the maintenance of the factory buildings in good condition for

the manufacturing processes there conducted, and which could fairly be said to be essential for that purpose—work similar in character to that of scrubbing the floors, cleaning the offices and ordinary janitor work.'' If a ball bearing manufacturer is the statutory employer of its independent contractor's window washer, it follows, a fortiori, that one in the business of operating and maintaining a public office building is likewise his statutory employer and subject to the act. Annotation 150 A. L R., l. c. 1241. Compare: American Radiator Co. v. Franzen, 81 Colo. 161, 254 Pac. 160. Under the stipulated facts Viselli was a statutory employee within the meaning of Section 3698(a) and the judgment is, therefore, affirmed. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.