Harry Fred SUTPHIN, Jr., Respondent,

v.

Cathy Lynn RENICK, Appellant.

No. ED 87644.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 16, 2007.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 20, 2007.

Application for Transfer Denied
May 1, 2007.

474

Jane C. Hogan, St. Louis, MO, for appellant.

Mark E. Davidson, Schwarts, Herman & Davidson, St. Louis, MO, for respondent.

GARY M. GAERTNER SR., Judge.

Appellant, Cathy Lynn Renick ("Wife"), appeals from the judgment of the Circuit Court of St. Louis County, in favor of Respondent, Harry Fred Sutphin, Jr. ("Second Husband" [1]). The trial court denied Wife's motion to set aside the parties' dissolution judgment. We reverse and remand.

Wife married Steven Renick ("First Husband") sometime prior to July of 1994 ("the first marriage"). Two children were born of the first marriage. In July of 1994, the first marriage was allegedly dis-

solved by the circuit court of St. Louis County ("Wife and First Husband's 1994 dissolution judgment").

On April 7, 1996, Wife and Second Husband purported to marry one another in El Dorado County, California ("the second marriage" [2]). Wife and Second Husband separated on or about January 1, 2000. No children were born of the second marriage.

Sometime prior to March 7, 2003, First Husband died. Thereafter, Wife filed a motion to set aside Wife and First Husband's 1994 dissolution judgment, submitting her motion on the pleadings. Second Husband was not a party to this action and there is no evidence in the record that he was aware of Wife's motion. Defendants, the two children of the first marriage, filed their waiver of notice and appearance and consented to the judgment. On March 7, 2003, in Cause No. 03CC–000414, the circuit court of St. Louis County entered a judgment setting aside Wife and First Husband's 1994 dissolution judgment on the basis that First Husband was not a competent party to the dissolution action, in that he was mentally and physically infirm and did not have the appointment of a next friend or guardian ad litem as required by Rule 52.02(k). Thus, the circuit court found that Wife and First Husband's 1994 dissolution judgment was void as irregular. There is no evidence in the record that the circuit court was aware of the second marriage.

On January 8, 2004, Second Husband filed a petition for dissolution of the second marriage. On January 16, 2004, Wife filed an affidavit stating that she was never married to Second Husband. Wife filed an

---

1. This reference is only for purposes of appeal and does not signify that Wife and Second Husband's purported marriage was valid.

2. This reference is also only for purposes of appeal and does not signify that Wife and Second Husband's purported marriage was valid.

answer to Second Husband's petition on January 28, 2004, where she again stated that she was never married to Second Husband.

On April 12, 2005, Wife and Second Husband both appeared with counsel before the trial court, advised the court that the dissolution matter had been settled, and proceeded to put the settlement terms on the record. Wife and Second Husband both testified and committed to the terms of the settlement, which included distribution of marital and separate property. Subsequently, the court ordered Wife and Second Husband to submit an executed separation agreement.

On April 25, 2005, Wife and Second Husband executed a separation agreement in which they agreed, in accordance with their testimony at trial, that they were married in 1996 in El Dorado County, California, and that their marriage was irretrievably broken. The separation agreement also divided the parties' real property, which was comprised of four parcels of property. Wife and Second and Husband agreed that: (1) two parcels were Wife's separate property, and (2) two parcels located on Almont were marital property ("the Almont properties") and should be listed for sale and sold as quickly as reasonably possible. Both parties affirmed that they entered into the separation agreement freely and voluntarily. On April 26, 2005, the trial court entered a dissolution judgment dissolving the second marriage ("the dissolution judgment at issue in this case").

In June of 2005, Second Husband filed a motion to enforce the terms of the separation agreement pertaining to the Almont properties. The court granted Second Husband's motion and appointed a special master for the purpose of enforcing the sale of the Almont properties.

On October 11, 2005, Wife filed a motion to set aside the dissolution judgment at issue in this case for lack of subject-matter jurisdiction, asserting that the second marriage was void. Specifically, Wife contended that she could not have been legally married to Second Husband because she was never legally divorced from First Husband. The trial court denied Wife's motion. This appeal by Wife followed.

 In a court-tried case, we will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares and applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). The question of whether a trial court has subject-matter jurisdiction is a question of fact. *Mackiewicz v. Essex Crane Rental Corp.*, 191 S.W.3d 66, 68 (Mo.App. E.D.2006).

In her sole point on appeal, Wife asserts the trial court erred in denying her motion to set aside the dissolution judgment at issue in this case for lack of subject-matter jurisdiction because she was never legally married to Second Husband. Wife argues that she could not have been legally married to Second Husband because she was never legally divorced from First Husband.

 Direct testimony of one of the parties may serve as proof of the existence of a marriage ceremony. *Vanderson v. Vanderson*, 668 S.W.2d 167, 171 (Mo.App. E.D.1984). We ascertain the substantive validity of a marriage according to the law of the place where the marriage is contracted. *Yun v. Yun*, 908 S.W.2d 787, 789 (Mo.App. W.D.1995).

 In this case, Second Husband testified that he and Wife married one another in California on April 7, 1996. Wife's testimony and the separation agreement also reveal that the second marriage took place

in California on April 7, 1996. This evidence is sufficient to prove the existence of a marriage ceremony between the parties.

In 2003, when the circuit court declared that Wife and First Husband's 1994 dissolution judgment was void and set it aside as irregular, the court, in effect, determined that those parties were never legally divorced. Thus, the question in this case is: When Wife and Second Husband attempted to marry one another in California on April 7, 1996, did the parties validly marry one another although, at the time of this purported marriage, Wife was still married to First Husband? To answer this question, we look to the law of the place where the second marriage was contracted—California.

Pursuant to Cal.Fam.Code section 2201(a)(1) (2004):

> A subsequent marriage contracted by a person during the life of a former husband or wife of the person, with a person other than the former husband or wife, is illegal and void from the beginning, unless ... [t]he former marriage has been dissolved ... before the date of the subsequent marriage. Cal.Fam. Code section 2201(a)(1) (2004).

■ "[W]hen a person has entered into two successive marriages, a presumption arises in favor of the validity of the second marriage." *Patillo v. Norris*, 65 Cal. App.3d 209, 135 Cal.Rptr. 210, 213 (1976). But this presumption is rebuttable by the person attacking the validity of the second marriage. *Id.* That person has the burden to prove that the first marriage had not been dissolved by the death of a spouse or by a dissolution judgment at the time of the second marriage. *Id.*

In Wife's motion to set aside the dissolution judgment at issue in this case, Wife alleged that the second marriage was void because "[a]t the time of the[ ] reputed marriage, [Wife] believed she was divorced

from [First Husband], when in fact she was not." In support of this allegation, Wife attached the circuit court's 2003 judgment that set aside the first marriage. As noted above, the circuit court's 2003 judgment declared Wife and First Husband's 1994 dissolution judgment void and set it aside as irregular, and, in effect, determined that those parties were never legally divorced. Thus, Wife has proved that the first marriage had not been dissolved by a dissolution judgment at the time of the second marriage.

■ But just because Wife and First Husband were never legally divorced, this in itself does not mean that Wife and Second Husband were not legally married. Rather, the second marriage must also have been contracted during First Husband's life.

· [8] The record only reveals that First Husband died sometime prior to March 7, 2003. If First Husband died before April 7, 1996, the date the second marriage was entered into, then the second marriage is valid. On the other hand, if First Husband died after the second marriage was entered into, the second marriage is illegal and void under Cal.Fam.Code section 2201(a)(1) (2004).

■ If Wife and Second Husband were never legally married, the trial court did not have subject-matter jurisdiction to enter a dissolution judgment. *See In re Marriage of Brown*, 878 S.W.2d 94, 96 (Mo.App. ,E.D.1994) (finding that if the parties in that case were never married, the trial court could not have subject-matter jurisdiction to enter a dissolution order). Whether First Husband was alive at the time of the second marriage is a finding of fact that is necessary to determine whether the second marriage was valid, and, in turn, whether the trial court had

subject-matter jurisdiction. Because this fact is not in the record before us, we reverse and remand to the trial court with instructions to determine the issue of subject-matter jurisdiction. Point granted.

Based on the foregoing, we reverse and remand to the trial court for findings and proceedings consistent with this opinion.

GEORGE W. DRAPER III, P.J., and ROBERT G. DOWD, JR., J., concur.